1
2
3
4                           UNITED STATES DISTRICT COURT
5                         NORTHERN DISTRICT OF CALIFORNIA
6
7    C.C.,                                    Case No.  23-cv-00408-LJC
8                    Plaintiff,
9          v.                                 **ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT**
10   MARTIN O'MALLEY,
                                              Re: Dkt. Nos. 12, 14
11                   Defendant.

12   **I.    INTRODUCTION**

13         Plaintiff C.C.[1] challenges the final decision of Defendant Martin O'Malley Commissioner

14   of Social Security (the Commissioner),[2] finding C.C. not disabled and thus ineligible for disability

15   benefits and Supplemental Security Income benefits.  The parties filed cross-motions for summary

16   judgment under Civil Local Rule 16-5.  For the reasons discussed below, C.C.'s Motion is

17   GRANTED, the Commissioner's Cross-Motion is DENIED, and the matter is REMANDED to the

18   Commissioner for further administrative proceedings.[3]

19   **II.   BACKGROUND**

20         **A.    Administrative Record**

21         C.C. is a woman in her late thirties with impairments that include degenerative disc

22   disease, myalgia, a rotator cuff syndrome, and extreme obesity.  *See* AR (ECF No. 9) at 23.

---

[1] Because opinions by the Court are more widely available than other filings, and this Order contains potentially sensitive medical information, this Order refers to the plaintiff only by her initials.  This Order does not alter the degree of public access to other filings in this action provided by Rule 5.2(c) of the Federal Rules of Civil Procedure and Civil Local Rule 5-1(c)(5)(B)(i).

[2] Martin O'Malley was sworn in as Commissioner of Social Security on December 20, 2023, and is therefore automatically substituted as the defendant in this case under Rule 25(d) of the Federal Rules of Civil Procedure.

[3] The parties have consented to the jurisdiction of a magistrate judge for all purposes under 28 U.S.C. § 636(c).

United States District Court
Northern District of California

United States District Court
Northern District of California

During the period at issue in the administrative record, C.C.'s weight ranged from 380 to 409 pounds. AR at 51 (380 pounds at November 19, 2021 administrative hearing); AR at 344 (409 pounds as of January 30, 2019 progress note). Since the parties' arguments focus on the administrative law judge's (ALJ's) treatment of C.C.'s obesity and the degree to which the ALJ's conclusions were supported by medical opinion evidence, this summary focuses on those issues, without addressing detailed medical records addressing C.C.'s other impairments. This summary is not intended as a complete recitation of C.C.'s medical history or the administrative record.

C.C.'s back pain began when she was working as a caregiver and fell backwards while lifting a client in 2018. *See, e.g.*, AR at 614. She had previously injured her right shoulder in a similar accident. *Id.* C.C. is right-handed. AR at 49.

In a June 12, 2020 progress note for C.C.'s pain treatment, physician assistant (PA) Beth Grossman McKee indicated that C.C. was "working at losing weight," which was "helping a little with back pain." AR at 472. In a September 23, 2021 progress note, Grossman McKee reported that C.C. complained of lower back pain at the level of eight out of ten, and that Grossman McKee believed "weight loss would help her pain as well" as seeking a different field of work. AR at 614.[4]

PA Brooke Aber, who also treated C.C., provided a physical assessment on November 9, 2020 indicating that C.C.'s back and shoulder impairments would frequently interfere with the attention and concentration necessary for simple work, would require C.C. to lie down during a workday beyond generally accepted break times, and would require unscheduled ten– to fifteen-minute breaks every hour. AR at 319. Aber stated that C.C. could only sit for a total of three hours in a workday, or stand or walk for a total of three hours, and that she would likely be absent from work more than four times per month. AR at 319–20.

Progress notes from both Grossman McKee and Aber describe C.C. as "morbidly obese." *E.g.*, AR at 529, 617. Some notes indicated that C.C. had a normal gait and other largely normal

---

[4] Although not addressed by the ALJ or the parties, PA Grossman McKee and PA Brooke Aber's progress notes are cosigned by medical doctors, including Dr. Ruben Kalra and Dr. William Longton. *See, e.g.*, AR at 524, 613.

1   findings (*e.g.*, AR at 348), while others indicated an antalgic gait—in other words, a limp to

2   manage pain—and that she was slow to get up from an examination table (*e.g.*, AR at 510), and

3   others had mixed findings (*e.g.*, AR at 441, noting normal gait but inability to heel-and-toe walk).

4   One doctor's note from February of 2019 indicated that C.C. could "walk with no difficulty,"

5   although that note also indicated that C.C. reported having "good and bad days," and that was "a

6   good day."  AR at 338.

7        Dr. Steven Kao, a state agency physician who reviewed C.C.'s medical records,

8   determined (among other limitations) that C.C. could only stand or walk for four hours and sit for

9   six hours out of an eight-hour workday, AR at 75, and concluded that she was limited to sedentary

10   work, AR at 80.  Dr. Kao specifically noted C.C.'s obesity.  AR at 87 ("Morbid obesity noted.").

11        Dr. E. Trias, another state agency physician who reviewed C.C.'s medical records,

12   determined that C.C. could stand or walk for six hours and sit for six hours in an eight-hour

13   workday, assessed various other limitations, and concluded that C.C. could perform light work.

14   AR at 106–11.  Dr. Trias did not specifically note C.C.'s obesity.  *See id.*

15        **B.    Administrative Hearing**

16        At the administrative hearing, C.C. testified that she last worked sporadically in 2019,

17   ceasing work because she could not find a less strenuous job after her 2018 injury.  AR at 46–47.

18   She testified that she considered working in security and at a call center but was unable to perform

19   that work because of her impairments, including her inability to walk consistently or sit for eight

20   hours.  AR at 47.  She attempted to provide cooking demonstrations on YouTube (largely without

21   using her right arm) but did not attract a sufficient audience to make money off of that endeavor.

22   AR at 47–49.  C.C. testified that she experiences pain in her right shoulder all the time and that

23   any form of reaching exacerbates that pain, particularly over her head.  AR at 49–50.

24        C.C. stated that she also experiences back pain all the time, exacerbated by sitting or

25   standing for too long.  AR at 50–51.  She stated that she could not stand for more than twenty or

26   thirty minutes without needing to sit down because of the pain, and would need to rest for an hour

27   before she could stand again.  AR at 52.  She testified that she would also feel uncomfortable after

28   sitting for more than twenty or thirty minutes.  AR at 52.  C.C. testified that she can only walk

3

around half a block at a time.  AR at 52.  She finds lying down on her side with a pillow between her legs most comfortable, and initially testified that she typically spends a third of the day lying down.  AR at 52–53.  C.C. later testified that she spends a majority of her time lying down.  AR at 58.  She stated that if she is not able to lie down between periods of sitting and standing, her "lower back hurts a lot" and "the pain shoots down [her] leg."  AR at 56.  C.C. has declined surgery recommended by one of her doctors.  AR at 57–58

C.C. testified that she is able to cook sitting down, and can handle most grooming and hygiene without assistance except for washing her back.  AR at 54.  C.C.'s mother does her laundry.  AR at 54.  C.C. does some shopping, but she has difficulty when she is not able to use a seated electric cart.  AR at 54–55.  She stated that she can carry multiple grocery bags or a gallon of milk with her left arm, but a gallon of milk would be "pushing it" with her right arm.  AR at 55.  If her back is not hurting too much, she sometimes walks five minutes round trip to and from a bench on a trail behind her house.  AR at 59.  She has no hobbies besides watching cooking videos.  AR at 59.

The remainder of the hearing consisted of testimony from a vocational expert.  AR at 60–67.

**C.    Legal Standard for Administrative Proceedings**

### 1.    Five-Step Process to Assess Disability

The Social Security Administration uses a five-step process to determine whether claimants are entitled to disability benefits:

> Step 1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "*not disabled*" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(b).

> Step 2. Is the claimant's impairment severe? If not, then the claimant is "*not disabled*" and is not entitled to disability insurance benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(c).

> Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is

"*disabled*" and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(d).

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "*not disabled*" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. See 20 C.F.R. § 404.1520(e).

Step 5. Is the claimant able to do any other work? If not, then the claimant is "*disabled*" and therefore entitled to disability insurance benefits. *See* 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical–Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "*not disabled*" and therefore not entitled to disability insurance benefits. *See* 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "*disabled*" and therefore entitled to disability benefits. *See id.*

*Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999) (footnote omitted); *see also Maxwell v. Saul*, 971 F.3d 1128, 1130 n.2 (2020).[5] "At steps one through four, the claimant retains the burden of proof; at step five, the burden shifts to the Commissioner." *Maxwell*, 971 F.3d at 1130 n.2.

## 2.    Consideration of Disability

Social Security regulations previously included obesity among the listings of impairments that can categorically establish disability at Step 3, but the Social Security Administration removed that listing in 1999. Since then, the Commissioner has issued a series of Social Security Rulings (SSRs)[6] addressing how obesity will be considered in assessing disability, beginning with SSR 00-3p in 2000, which was superseded by SSR 02-1p in 2002. Most recently, the

---

[5] 20 C.F.R. § 416.920 sets forth materially identical steps to assess disability for the purpose of Supplemental Security Income benefits, which are also at issue in this case.
[6] SSRs are official interpretations of law and regulation issued by the Social Security Administration. Although they do not have the force of law, they are binding on ALJs and entitled to some deference from courts, and an ALJ's failure to comply with an SSR can constitute error requiring remand under at least some circumstances. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1229 (9th Cir. 2009); *Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006); *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 n.6 (9th Cir. 1989).

1    Commissioner issued SSR 19-2p in 2019, superseding SSR 02-1p.  SSR 19-2p, *Titles II & XVI:*

2    *Evaluating Cases Involving Obesity*, 2019 WL 2374244 (May 20, 2019).  Although obesity is no

3    longer a listed impairment, "the functional limitations caused by the MDI of obesity, alone or in

4    combination with another impairment(s), may medically equal a listing" if, for example, obesity

5    "increase[s] the severity of a coexisting or related impairment(s) to the extent that the combination

6    of impairments medically equals a listing."  *Id.* at *4.  Under the SSR, the Social Security

7    Administration "will not make general assumptions about the severity or functional effects of

8    obesity combined with another impairment(s)," but instead "evaluate[s] each case based on the

9    information in the case record" to determine how obesity affects other impairments.  *Id.*  "As with

10   any other impairment," the Social Administration must "explain how [it] reached [its] conclusion

11   on whether obesity causes any limitations."  *Id.*

12        In addition to assessing obesity at Step 3, the Social Security Administration also "must

13   consider the limiting effects of obesity when assessing a person's RFC," or residual functional

14   capacity, to determine whether the claimant can perform their past work or available work at Steps

15   4 and 5.  *Id.*  The Social Security Administration must "explain how [it] reached [its] conclusion

16   on whether obesity causes any limitations."  *Id.*  SSR 19-2p notes that obesity can affect the

17   exertional functions of "sitting, standing, walking, lifting, carrying, pushing, and pulling";

18   nonexertional functions including "climbing, balancing, stooping, kneeling, crouching, and

19   crawling"; range of motion of the spine and extremities, and "the ability to sustain a function over

20   time," including as a result of fatigue.  *Id.*

21        **D.    The ALJ's Decision**

22        C.C.'s applied for disability benefits and Supplemental Security Income benefits on

23   October 23, 2020, alleging disability beginning November 24, 2018.  AR at 21.  C.C. requested a

24   hearing before an ALJ after her applications were denied initially and on reconsideration.  *Id.*  She

25   was represented by counsel during the administrative process.  *Id.*

26        At Step 1, the ALJ determined that C.C. had not engaged in substantial gainful activity

27   since her alleged onset date, finding that although she had performed some work during that time,

28   it did not meet the relevant threshold to establish non-disability on that basis.  AR at 23.

1    At Step 2, the ALJ identified the following impairments as severe: "Degenerative Disc

2    Disease, Myalgia, Obesity, [and] Rotator Cuff Syndrome of the Right Shoulder". AR at 23. The

3    ALJ did not identify any impairments as less than severe. *Id.*

4    At Step 3, the ALJ found that none of C.C.'s impairments, alone or in combination, met

5    the criteria for any listing. AR at 24. The ALJ considered Listings 1.15 (skeletal spine disorders

6    resulting in nerve root compromise), 1.16 (lumbar spinal stenosis resulting in compromise of the

7    cauda equina), and 1.18 (joint abnormalities in extremities). *Id.* The ALJ also addressed C.C.'s

8    obesity, as follows:

9            I have evaluated obesity pursuant to the detailed guidelines set forth
         in SSR 19-2p. Obesity is not a listed impairment; however, the
10       functional limitations caused by the medically determinable
         impairment of obesity, alone or in combination with other
11       impairments, may medically equal a listing. For example, obesity may
         increase the severity of a coexisting or related impairment to the
12       extent that the combination of impairments medically equals a listing.
         General assumptions about the severity or functional effects of
13       obesity combined with another impairment will not be made. Obesity
         in combination with other impairments may or may not increase the
14       severity or functional limitations of the other impairments. Obesity is
         often associated with musculoskeletal, respiratory, cardiovascular,
15       and endocrine disorders. Each case will be evaluated based on the
         information in the case record. Accordingly, I have fully considered
16       obesity in the context of the case record in making this decision, and
         obesity does not equal a listing alone or in combination with other
17       impairments.

18   *Id.* Aside from that paragraph, and the inclusion of obesity among C.C.'s severe impairments

19   noted above, the ALJ's decision does not otherwise discuss C.C.'s obesity.

20   In assessing residual functional capacity (RFC) for the purpose of Steps 4 and 5, the ALJ

21   determined that C.C. could:

22           perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)
         except the claimant can only occasionally climb, balance, stoop,
23       kneel, crouch and crawl, can only occasionally reach overhead with
         the upper right extremity, can have no exposure to unprotected height
24       and dangerous moving mechanical parts, [and] requires the option to
         alternate between sitting and standing as needed, as long as doing so
25       will not cause the claimant to be off task or need to leave the work
         station.
26

27   AR at 24.

28   The ALJ acknowledged C.C.'s testimony regarding relatively severe limitations in areas

7

United States District Court
Northern District of California

1   including standing, walking, sitting, lifting, and reaching, AR at 25, but found that testimony not

2   fully credible because the ALJ determined that it was contradicted in part by medical evidence,

3   AR at 26.  The ALJ found the state agency consultants, Drs. Kao and Trias, partially persuasive,

4   and did not find PA Aber persuasive, although the ALJ specifically noted that all of those opinions

5   were "well supported" by objective medical evidence.  AR at 27–28.  In assessing a less restrictive

6   RFC than indicated by C.C.'s testimony and the opinions of Dr. Kao and PA Aber, the ALJ relied

7   heavily on the "many exams where the claimant walked with a normal gait" and exhibited normal

8   strength and range of motion.  AR at 26–28.  Although the ALJ acknowledged that some "more

9   recent exams noted more remarkable findings, such as the claimant walking with an antalgic gait"

10  (i.e., a limp to minimize pain), the ALJ decided that C.C.'s limitations were sufficiently captured

11  by the RFC that the ALJ assessed.  *Id.*

12        Based on the RFC above and testimony from a vocational expert, the ALJ determined at

13  Step 4 that C.C. could not perform her past work as a home attendant, but found at Step 5 that

14  C.C. was not disabled because she could perform other work that was available in the national

15  economy.  AR at 28–29.

16        The Appeals Council denied C.C.'s request for review of the ALJ's decision, making it the

17  final decision of the Commissioner.  AR at 1.

18        **E.    The Parties' Arguments**

19        C.C. contends that the ALJ failed to explain how obesity influenced C.C.'s RFC as

20  required by SSR 19-2p, the Ninth Circuit's decision in *Celaya v. Halter*, 332 F.3d 1177 (9th Cir.

21  2003), and district court decisions interpreting that authority.  ECF No. 12-1 at 3–4.  She argues

22  that given her five-foot, nine-inch height, she would have been classified as disabled under the

23  former Listing 9.09 if she weighed 298 pounds, which the record demonstrates she greatly

24  exceeded with weight measurements from 380 to 409 pounds.  *Id.* at 4.  C.C. notes that one of her

25  treating physician assistants recommended weight loss to help with her pain, that medical notes

26  indicated she was trying to lose weight to reduce her back pain, and that her medical providers had

27  difficulty finding an MRI machine that would accommodate her weight.  *Id.* at 5.  According to

28  C.C., the ALJ's recitation of SSR 19-2p's standard of review at Step 2 does not excuse the ALJ's

1    failure to mention C.C.'s obesity in assessing her RFC.  *Id.* at 6–7.  In addition to the Ninth

2    Circuit's decision in *Ceyala*, C.C. cites several district court decisions finding error requiring

3    remand where ALJs either failed to mention a claimant's obesity at all or failed to address obesity

4    when formulating a claimant's RFC.  *Id.* at 7–10.[7]

5         In a succinct five-page Cross-Motion, the Commissioner argues that the ALJ

6    acknowledged C.C.'s obesity in assessing severe impairments, but reasonably found that it did not

7    result in any particular limitations, because no "reliable opinion" in the record "assessed

8    limitations stemming from the condition, greater than those already included in the residual

9    functional capacity finding."  ECF No. 14 at 4–5.  Portions of the Commissioner's Cross-Motion

10   appear to go further and assert that no medical opinion assessed greater restrictions than the ALJ's

11   RFC determination *at all*, without qualifying that assertion as a lack of opinions specifically

12   addressing obesity.  *E.g.*, *id.* at 5 ("Without any medical opinions, as imperatives, containing

13   greater restrictions than those already included in the [RFC] finding, it is very easy to a reasonable

14   mind to see how the ALJ reached the conclusion.").  The Commissioner contends that the Court

15   cannot substitute its judgment for that of the ALJ.  *Id.*  The Commissioner's Cross-Motion does

16   not acknowledge SSR 19-2p or any case cited in C.C.'s Motion except for *Biestek v. Berryhill*,

17   139 S. Ct. 1148 (2019), a Supreme Court decision with no connection to obesity that both parties

18   cite for generally applicable standards of review.  *See generally id.*

19        C.C. argues in her Reply that multiple sources in the record assessed greater restrictions

20   than the ALJ's RFC, including PA Aber and state agency consultant Dr. Kao, both of whom stated

21   that C.C. could perform only a limited range of sedentary work.  ECF No. 15 at 2.  C.C. also

22   highlights PA Grossman McKee's note that "weight loss would help her pain" as specifically

23   connecting C.C's obesity to her impairments.  *Id.*  C.C. otherwise reiterates arguments from her

---

[7] C.C. also discusses the Ninth Circuit's unpublished decision in *Petersen v. Barnhart*, 213 F. App'x 600 (9th Cir. 2006).  ECF No. 12-1 at 10.  Ninth Circuit Rule 36-3(c) prohibits citing that court's unpublished decisions issued before January 1, 2007 "to the courts of this circuit" in most circumstances.  This Court has withdrawn its former Local Rule 3-4(e), respecting other courts' designation of decisions as not for citation.  *Peterson* is not necessary to the disposition of this case, and the Court need not consider whether Ninth Circuit Rule 36-3 effectively prohibits its citation in the absence of a corresponding local rule promulgated by this Court.

United States District Court
Northern District of California

1  Motion that her "extreme morbid obesity" was apparent from the record, that its connection to her

2  back pain is obvious, and that the ALJ's failure to address obesity in the context of C.C.'s RFC

3  was inconsistent with SSR 19-2p and relevant caselaw. *See generally id.* at 1–4.

4      C.C. seeks remand for further administrative proceedings, and does not argue that the case

5  should be remanded with instructions to award benefits.  ECF No. 12-1 at 10; ECF No. 15 at 4.

6  ## III.    ANALYSIS

7  ### A.    Legal Standard

8      In cases challenging the denial of disability benefits, district courts have authority to

9  review and "affirm[], modify[], or revers[e] the decision of the Commissioner of Social Security,

10  with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  "An ALJ's disability

11  determination should be upheld unless it contains legal error or is not supported by substantial

12  evidence," which "'means more than a mere scintilla, but less than a preponderance; it is such

13  relevant evidence as a reasonable person might accept as adequate to support a conclusion.'"

14  *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d

15  1028, 1035 (9th Cir. 2007)).  A court must consider evidence both supporting and detracting from

16  the Commissioner's decision; if the evidence could reasonably support either outcome, the court

17  may not substitute its judgment for that of the ALJ.  *Id.* at 1010.  Courts "review only the reasons

18  provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon

19  which he did not rely."  *Id.*

20  ### B.    Caselaw Regarding Obesity and Disability

21      In *Celaya v. Hunter*, the pre-1999 listing for obesity was still in effect when the plaintiff

22  filed her application, but the record did not show that she consistently met the weight threshold

23  that would have met that listing for her height.  332 F.3d 1177, 1180–81 & n.1 (9th Cir. 2003).

24  Since the plaintiff weighed somewhat less than 212 pounds and was 57 inches tall, *id.*, her BMI

25  was slightly under 46.[8]  The Ninth Circuit held that the ALJ erred in failing to consider any effects

26

27  [8] BMI, or body mass index, is a common (albeit imperfect) measure of obesity calculated as weight in kilograms divided by the square of height in meters.  SSR 19-2p, 2019 WL 2374244, at

28  *2.  The plaintiff in *Celaya*'s weight of 212 pounds is equal to approximately 96 kilograms.  Her height of 57 inches is equal to approximately 1.45 meters.

United States District Court
Northern District of California

United States District Court
Northern District of California

that the plaintiff's obesity on her other severe impairments of hypertension and diabetes, and ordered remand for the ALJ to conduct a "multiple impairment analysis that explicitly accounts for the direct and marginal effects of the plaintiff's obesity during the period in question and that culminates in reviewable, on-the-record findings." *Id.* at 1181–84. The Commissioner conceded on appeal that the ALJ had not evaluated the effects of the plaintiff's obesity "even implicitly." *Id.* at 1182. The Ninth Circuit ordered the case remanded "to the ALJ for a step-three multiple impairment analysis that explicitly accounts for the direct and marginal effects of the plaintiff's obesity during the period in question and that culminates in reviewable, on-the-record findings", and "for a proper step-four analysis based on all of the evidence in the record currently and as it is supplemented." *Id.* at 1183, 1184. The Ninth Circuit's decision relied in part on the fact that the claimant was illiterate and unrepresented, and "very likely never knew that she *could* assert obesity as a partial basis for disability." *Id.* at 1183.

In *Burch v. Barnhart*, a precedential decision not addressed here by either party, the Ninth Circuit held that a plaintiff did not meet her burden to show any prejudicial error where the ALJ acknowledged that her "obesity likely contributes to her back discomfort" but did not identify it as a severe impairment at Step 2 or address it in an RFC assessment, and the plaintiff failed to identify any listing she might have met or functional limitation that should have been assessed if the ALJ had properly considered her obesity. 400 F.3d 676, 681–84 (9th Cir. 2005). The Ninth Circuit acknowledged that ALJs still have some affirmative duty to develop the record when a claimant is represented, but noted the plaintiff's representation by counsel during administrative proceedings as one distinguishing factor as compared to *Celaya*. *Id.* at 682. A physician in that case characterized the plaintiff as "slightly obese," and the ALJ described her as "somewhat obese." *Id.* at 678, 684.

District courts have followed *Celaya* to hold that ALJs erred by wholly ignoring claimants' obesity, including in some cases where plaintiffs were represented by counsel. *E.g.*, *Browning v. Colvin*, 228 F. Supp. 3d 932, 936, 942–44 (N.D. Cal. 2017); *Cruz v. Colvin*, No. SACV 12-600 AJW, 2013 WL 1912786, at *2–4 (C.D. Cal. May 8, 2013); *Kerl v. Astrue*, No. C11-00330 HRL, 2012 WL 900899, at *2 (N.D. Cal. Mar. 15, 2012); *see also Jaroch v. Barnhart*, No. C03-01971

1   SI, 2004 WL 1125050, at *3 (N.D. Cal. May 17, 2004) (finding error where an ALJ's decision

2   "twice mentions plaintiff's 'size'", but failed to address obesity as a potential impairment or its

3   effect on the plaintiff's RFC).

4          District court decisions have also understood *Celaya* and applicable SSRs as requiring an

5   ALJ to address specifically the effects of obesity on a claimant's RFC.  In *Wright v. Berryhill*, for

6   example, "the ALJ found obesity to be a severe and stated that he considered [the claimant's]

7   obesity in combination with his other impairments and its impact on his ability to work."  No. 17-

8   cv-01476-LB, 2018 WL 3109818, at *16 (N.D. Cal. June 25, 2018) (footnote omitted).  Judge

9   Beeler held that although the ALJ's acknowledgment of the claimant's obesity differed from the

10  administrative decision in *Celaya*, the ALJ erred by "fail[ing] to consider and adequately explain

11  how obesity exacerbated [the claimant's] other impairments, including his knee pain, spinal

12  abnormalities, depression, and anxiety," and specifically in failing "explain *how* he analyzed [the

13  claimant's] obesity in combination with his other impairments".  *Id.* at *16–17.  The ALJ in that

14  case also "did not identify *which* signs, symptoms, and lab findings he relied on."  *Id.* at *17.

15         Decisions from other districts within the Ninth Circuit have reached similar results.  In a

16  2020 case, the Central District of California found an ALJ's mere acknowledgment of obesity as a

17  severe impairment insufficient when the ALJ failed to provide "meaningful analysis" to "explain

18  how Plaintiff's obesity impacts her other impairments [including diabetes and asthma] or why he

19  does not factor Plaintiff's obesity in her RFC assessment."  *Mary Elizabeth C. v. Saul*, No. CV 19-

20  3723-KS, 2020 WL 2523116, at *16 (C.D. Cal. May 18, 2020).  Records noted that the plaintiff in

21  that case was at times "morbidly obese with BMI between 50 and 59.9", while at other times her

22  BMI was 35.8 or lower.  *Id.*  The Eastern District of Washington held in a 2022 decision that the

23  ALJ's failure to address what effects the plaintiff's "morbid obesity with BMI frequently higher

24  than 45" had on the plaintiff's knee impairments was one of several errors requiring remand,

25  notwithstanding the ALJ's conclusory assertion that a restriction to sedentary work with additional

26  conditions sufficiently accommodated any limitations caused by the plaintiff falling "in the obese

27  range".  *Yolanda P. v. Kijakazi*, No. 1:20-cv-03245-JAG, 2022 WL 17248127, at *4 (E.D. Wash.

28  Sept. 30, 2022); *see also Ramirez v. Berryhill*, No. SACV 17-0417 (KS), 2018 WL 2392155, at

United States District Court
Northern District of California

12

1  *11 (C.D. Cal. May 25, 2018) ("The ALJ found obesity to be a severe impairment, but offers no

2  explanation of how that impairment impacts Plaintiff's other impairments and no explanation for

3  why obesity is not discussed.").

### C.    The ALJ Did Not Sufficiently Address C.C.'s Obesity

5       There is no question that the record in this case reflected C.C.'s obesity sufficiently for the

6  ALJ to recognized its potential effect on C.C.'s ability to work, because the ALJ specifically

7  acknowledged C.C.'s obesity as a severe impairment.  AR at 23.  As in *Wright*, the record also

8  "indicates that [C.C.'s] obesity exacerbated [her] other impairments".  2018 WL 3109818, at *17.

9  PA Grossman McKee acknowledged as much in a note indicating that losing weight would likely

10  reduce C.C.'s back pain.  AR at 614.[9]  The ALJ also should have recognized as a matter of

11  common sense and knowledge that extreme obesity could exacerbate a spinal impairment.  *See,*

12  *e.g.*, *Celaya*, 332 F.3d at 1182 (noting "the potential effect of obesity on" diabetes and

13  hypertension as triggering "a responsibility to consider their interactive effect", without citing

14  record evidence specifically drawing such a connection); *Ramirez*, 2018 WL 2392155, at *11

15  (noting "the well-established correlation between obesity and diabetes milletus, kidney disease,

16  glaucoma, and the neuropathy symptoms that Plaintiff suffers").

17       C.C. has one thing in common with the plaintiff in *Burch*, where the Ninth Circuit found at

18  most harmless error: she was represented by counsel during administrative proceedings.  But as

19  the Ninth Circuit acknowledged, an ALJ's duty to develop the record and provide reviewable

20  reasoning is not limited to unrepresented claimants.  *Burch*, 400 F.3d at 682.  "The ALJ always

21  has a special duty to fully and fairly develop the record and to assure that the claimant's interests

22  are considered even when the claimant is represented by counsel."  *Celaya*, 332 F.3d at 1183

---

[9] This record therefore differs from cases where courts have found an ALJs' erroneous failure to address effects of obesity to be harmless because no evidence showed that obesity exacerbated an impairment. *E.g.*, *Sorian v. Berryhill*, No. 19-cv-00445-DMR, 2020 WL 2768935, at *8 (N.D. Cal. May 28, 2020) (noting that doctors discussed the plaintiff's obesity only as a complicating factor for surgery, not as exacerbating symptoms or limitations); *but see Ramirez*, 2018 WL 2392155, at *11 (holding that an ALJ's decision could not be affirmed based on a lack of "record evidence that any doctor placed limitations or restrictions on Plaintiff's activities based solely on his obesity" when the ALJ failed to address that issue).  The Commissioner does not assert harmless error in this case.  *See generally* ECF No. 14.

United States District Court
Northern District of California

1   (cleaned up).  Where obesity could reasonably be expected to affect a plaintiff's other impairments

2   or ability to work, the fact that a plaintiff was represented by counsel during administrative

3   proceedings does not excuse an ALJ's failure to explain the effects of obesity.  *See Wright*, 2018

4   WL 3109818, at *17 (noting that the plaintiff was represented, like in *Burch* and unlike *Celaya*,

5   but still finding that the ALJ's failure to address the effects of obesity required remand).

6            There are also significant differences between C.C.'s circumstances and *Burch*.  In that

7   case, the plaintiff was only "somewhat" or "slightly" obese, weighing up to 222 pounds, 332 F.3d

8   at 678, 684, while C.C. at times weighed over four hundred pounds and was consistently

9   characterized as "morbidly obese," *e.g.*, AR at 529, 617.  Medical records listed C.C.'s BMI as

10  high as 60.43 kg/m$^2$, *e.g.*, AR at 337, well above the values characterized as "morbidly" or

11  "extremely" obese in other cases.  *See Celaya*, 332 F.3d at 1183 n.3 (noting that the plaintiff's

12  height and weight "required trivial arithmetic calculations to determine that her BMI [of

13  approximately 46] placed her in the 'extremely obese' range"); *Mary Elizabeth C.*, 2020 WL

14  2523116, at *16 ("morbidly obese with BMI between 50 and 59.9"); *Yolanda P. v. Kijakazi*, 2022

15  WL 17248127, at *4 ("morbid obesity with BMI frequently higher than 45"); *see also Mettias v.*

16  *United States*, No. CIV. 12-00527 ACK, 2015 WL 1931082, at *8 (D. Haw. Apr. 21, 2015)

17  ("Morbid obesity is generally defined as a BMI of 40 or greater, or 35 or greater with

18  comorbidities.").

19           The ALJ in *Burch* also specifically addressed the potential effects of the plaintiff's obesity

20  (noting that it might exacerbate her back pain) and found that it was not a severe impairment, 332

21  F.3d at 682, 684, thus providing at least some degree of "reviewable, on-the-record findings" as to

22  the "effects of the plaintiff's obesity", *see Celaya*, 332 F.3d at 1183.  Here, in contrast, the ALJ

23  found that C.C.'s obesity was a severe impairment, meaning that it "significantly limit[s] the

24  ability to perform basic work activities".  AR at 23–24; *see also* SSR 19-2p, 2019 WL 2374244, at

25  *3. But the ALJ did not address *how* obesity limits C.C.'s ability to work, thus failing to "explain

26  how [the ALJ] reached [a] conclusion on whether obesity causes any limitations" as required by

27  SSR 19-2p, and failing to provide the sort of reviewable findings required by *Celaya*.

28           The Commissioner contends that the Court should defer to the ALJ's conclusion because

1    no medical opinion found that C.C.'s obesity caused more significant limitations than those

2    assessed by the ALJ.  ECF No. 14.  As C.C. correctly notes, however, the record includes at least

3    two opinions of greater restrictions, by PA Aber and Dr. Kao.  AR at 75–80, 319–30.  Those

4    opinions presumably took into account C.C.'s obesity, since PA Aber treated C.C. and described

5    her as "morbidly obese," *e.g.*, AR at 529, and Dr. Kao reviewed C.C.'s medical records and also

6    noted "[m]orbid obesity," AR at 87.

7          C.C.'s obesity also might tend to support C.C.'s testimony regarding the limited time she

8    can spend walking, standing, and sitting without lying down to recover.  *See* AR at 52–53, 56.

9    The ALJ rejected that testimony based in large part on medical records that sometimes indicated

10   normal gait and abilities, such as standing on heels and toes, AR at 26–27, which do not directly

11   speak to C.C.'s ability to walk, stand, or sit for sustained periods.  At least one of the assessments

12   that the ALJ cited for its findings of normal gait and strength specifically noted C.C.'s complaints

13   that prolonged sitting or standing exacerbated her back pain.  AR at 348 ("Worse with prolonged

14   sitting, standing and bending.  Will notice after 30 minutes.  Improved with laying flat.").[10]

15         Although not addressed by the Commissioner's Cross-Motion—which cites nothing from

16   the administrative record except for the ALJ's decision and the Appeals Council decision

17   declining review, *see generally* ECF No. 14—the record includes some evidence that is at least in

18   tension with C.C.'s claim of disability and her testimony regarding her symptoms.  As the ALJ

19   noted, AR at 26–27, some reports indicated a normal gait and strength, *e.g.*, AR at 348, at least

20   one report indicated that that C.C. could "walk with no difficulty" (albeit on "a good day"), AR at

21   338, and one report from an emergency room stated that she had "[n]o myalgias, back pain, joint

22   pain," or decreased range of motion, AR at 560.[11]  But the ALJ also acknowledged reports

23   indicating pain, reduced range of motion, antalgic gait, difficulty getting off of an examination

24   table, and osteoarthritis and tendinosis in C.C.'s shoulder.  AR at 25–27.  Moreover, some of the

25   _____

26   [10] The ALJ cites this report using an exhibit number reflecting the manner in which the record was
     assembled for the ALJ's review.  *See* AR at 25 (citing 2F/28).

27   [11] C.C. visited the emergency room for suspected food poisoning.  AR at 556.  It is not clear how
     thoroughly the doctor who saw her evaluated or recorded symptoms unrelated to C.C.'s gastric
28   distress, or whether the report of no back or joint pain might have been intended by either C.C. or
     the doctor to indicate no change from C.C.'s baseline condition.

United States District Court
Northern District of California

reports that the ALJ cites as showing that "the claimant denied having any muscle pain, joint pain, numbness or weakness," in fact report significant pain or other symptoms.  AR at 27 (citing "2F/13, 16, 18, 24, 26, 28; 5F/10"); *see, e.g.*, AR at 333 (Ex. 2F at 13) ("Pt presents with worsening complaints.  I am concerned as pt . . . feels the pain is worse after PT[.]"); AR at 336 (Ex. 2F at 16) ("Pain is worse with lifting the arm, laying on the arm- feels a sharp pain."); AR at 338 (Ex. 2F at 18) (noting that C.C. experiences back pain "2-3 times a week and the pain lasts all day"); AR at 348 (Ex. 2F at 28) (noting worsening symptoms after thirty minutes of sitting or standing, improved by lying flat).

It is the ALJ's role to resolve this sort of mixed record, but the ALJ has a responsibility in such cases to explain the reasoning behind that decision, taking into account all relevant impairments.  *See* SSR 19-2p, 2019 WL 2374244, at *4 ("As with any other impairment, we will explain how we reached our conclusion on whether obesity causes any limitations.").  The Court does not reach the question of whether this record *could* support the ALJ's conclusions, because the ALJ's failure to address how C.C.'s obesity affected those abilities deprives the Court of "reviewable, on-the-record findings" amenable to evaluation.  *See Celaya*, 332 F.3d at 1183.  On remand, the Commissioner should address specifically how C.C.'s obesity affects or potentially alters the conclusion that her limitations are less severe than those assessed by Dr. Kao, PA Aber, and C.C.'s own testimony.

## IV.    CONCLUSION

For the reasons discussed above, C.C.'s Motion for Summary Judgment is GRANTED, the Commissioner's Cross-Motion is DENIED, and the matter is REMANDED to the Commissioner for further administrative proceedings consistent with this Order.  The Clerk shall enter judgment in favor of C.C. and close the case.

**IT IS SO ORDERED.**

Dated:  March 28, 2024

LISA J. CISNEROS
United States Magistrate Judge

United States District Court
Northern District of California

16